### TRACY *v.* RUBLEIN.

1. AUTOMOBILES—PARKING PARTIALLY ON PAVEMENT—NEGLIGENCE—
   CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

   It was not error for trial court to submit to jury issues of negli-
   gence of defendant trucker and contributory negligence of
   plaintiff passenger in a friend's car, where evidence shows truck
   with 2 flat tires on right rear wheel was only partially off
   pavement and no fusees or other warning devices were dis-
   played as required by statute while defendant had left it
   for purpose of seeking aid and car in which plaintiff was
   riding collided with rear end when unable to stop because
   of slippery pavement, and evidence supported jury's ver-
   dict for plaintiff (CLS 1954, §§ 257.672, 257.713).

2. SAME—IMPUTED NEGLIGENCE—PROXIMATE CAUSE.

   The negligence of the driver of a car may not be imputed to
   a passenger therein and will not excuse from liability the driver
   of car with which the one plaintiff was riding in collided,
   as there may be 2 proximate causes to an accident.

   BUTZEL, J., dissenting.

Appeal from Delta; Jackson (Glenn W.), J. Sub-
mitted April 8, 1955. (Docket No. 55, Calendar No.
46,354.) Decided June 6, 1955.

Case by Rhea Tracy against Edward C. Rublein
for damages for personal injuries sustained when
car in which she was riding struck disabled truck

REFERENCES FOR POINTS IN HEADNOTES

[1] 5 Am Jur, Automobiles §§ 337, 340, 408.
[2] 5 Am Jur, Automobiles § 494; 38 Am Jur, Negligence § 63 *et
seq.*

parked partly on highway. Verdict and judgment for plaintiff. Defendant appeals. Affirmed.

*George S. Baldwin,* for plaintiff.

*McGinn & Fitzharris,* for defendant.

BUTZEL, J. (*dissenting*). This is an action for damages arising out of injuries suffered in a collision between an automobile and a truck on September 10, 1951.

Plaintiff Rhea Tracy arranged to ride as a guest with Charles Clement and his wife from Shingleton in the upper peninsula to Midland in the lower peninsula of Michigan. They left Shingleton, 114 miles from St. Ignace, at 7:30 a.m. in a new 1951 Oldsmobile and at approximately 9:45 a.m. were about 10 miles from the city of St. Ignace where they intended to catch the 10 a.m. ferry to cross the straits. A light rain or "drizzle" had been falling. At this point west of St. Ignace they became aware of a truck ahead of them on a wide curve in the road and headed in the same direction. The south half of the road was too narrow for one car to pass another going in the same direction. The driver of the car in which plaintiff was a passenger attempted to pass the truck partially on the south side of the road but was unable to do so because of the approach of a car from the opposite direction. After pulling back into his own lane behind the truck he slowed down and tried to stop. However, the car did not respond to the brakes and skidded into the back end of the truck which was in fact disabled and stationary. Plaintiff brought suit against the driver, who was the owner of the truck and the defendant herein. The case was submitted to the jury which returned a verdict for $2,500 in plaintiff's favor.

The van-type truck was carrying a full load of some 300 cases of soft drinks toward St. Ignace, the truck and load together weighing over 22,000 pounds. At 7:45 a.m., 2 hours before the accident occurred, both of the dual tires on the right rear wheel of the truck suddenly burst without warning and became flat because of punctures. The driver testified that he then stopped the truck and attempted to park it off the road, but only succeeded in moving it partially onto the shoulder. He said the heavy load, the texture of the shoulder, and the flat tires all prevented him from moving it entirely off the highway. It had come to a standstill and did not respond to efforts to move it. Unpossessed of part of the necessary equipment he could not change the tires. He, therefore, left the truck, thumbed a ride into St. Ignace for help and returned some time after the accident occurred. Before leaving he did not place a warning flag or any other device on the road behind the truck, nor did he attempt to unload the truck to lighten it so as to attempt to drive further onto the shoulder.

The car in which plaintiff was a passenger was proceeding at 50 to 55 miles per hour when both plaintiff and the driver noticed the truck some 800 to 1,200 feet, or 2 to 3 blocks, ahead of them. Initially they did not realize it was stationary. The driver testified that 1 of the 2 ladies said, when they were 500 feet from the truck, that it had a flat tire. Plaintiff said she made such a statement when they were only 100 feet away. Both agree that when about 250 feet away the driver turned out to pass the truck. However, upon seeing a car approaching at a rapid rate from the opposite direction, he turned back into his own lane, at about 30 to 35 miles per hour. He applied the brakes but skidded 40 to 50 feet into the back of the truck. In addition to the discrepancy in the testimony regarding knowledge

of the flat tires, plaintiff and the driver differed as to when it was realized that the truck was not moving. Plaintiff testified that *she* realized it when they were 100 feet behind the truck after they had decided not to pass, while the driver stated that *he* realized it when they were about to pass some 250 feet away. However, both agree as to when the truck was initially seen, when the driver attempted to pass, the speeds attained, and the fact that had it been a normal day when the pavement was not slippery they could have stopped in plenty of time to avoid the collision.

Defendant has appealed the judgment on grounds that plaintiff was contributorily negligent as a matter of law and that defendant's negligence was not the proximate cause of the accident.

The duties of a guest passenger are carefully noted in *Jones* v. *Daniels,* 328 Mich 402. When considered in light of the foregoing circumstances it can only be said that plaintiff's observance or nonobservance of these duties was correctly submitted as a matter of fact for the determination of the jury.

Plaintiff argues that defendant was negligent in that he violated the statutes prohibiting parking on the highway, CLS 1954, § 257.672 (Stat Ann 1952 Rev § 9.2372), and requiring placing of flags on the road near disabled trucks, CLS 1954, § 257.713 (Stat Ann 1952 Rev § 9.2413), as well as his common-law duty of care under the circumstances.

The parking statute provides:

"Outside of the limits of any city and village, it shall be unlawful to stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or to leave such vehicle off such part of said highway."

Though there seems to be some dispute as to the exact condition of the shoulder of the road, the uncontroverted and corroborated testimony of the defendant was that he was unable to move the truck completely off the highway under its own power. Defendant returned with a Mr. Gamble and his assistant who helped the defendant unload the truck and change the tires. Mr. Gamble testified:

"I have had experience in attempting to move trucks with flat tires within 20 miles of that point on US–2. It is almost impossible to move them unless you have more power to move them with. They just don't seem to have power enough when the tires are flat on one side. I don't think his truck could have gone on that shoulder in the condition I saw it that day."

The evidence also showed that when they returned to the scene a State truck was already there and was hooked on to defendant's truck with road chains, but evidently had not moved it.

Plaintiff argues that it would have been practical for defendant to have unloaded the truck and thereafter moved it. Defendant initially testified that it would have been difficult for him to have unloaded the truck himself and that it would have taken him some 2 hours to do it. The accident happened less than 2 hours after the time he could have commenced to unload. Mr. Gamble said:

"I helped unload that load. The truck was on a slant. The right rear tires were flat. I saw that. I got up on the load. The platform of the truck was on a slant which was quite bad; it slanted quite bad because it was hard to unload. The cases were slanting, also. It was difficult to unload it because of the slant. I am familiar with the loading and unloading of trucks such as I saw there that day. It would take a man to unload a load like that alone possibly 2 to 3 hours."

However, on cross-examination the defendant stated:

"I expect I could have unloaded or partially unloaded that truck. I probably could have got partially unloaded so I could have moved it within an hour."

While unloading the truck on the highway may not have been a violation of the parking and stopping statute and thus negligence *per se,* see CLS 1954, § 257.38 (Stat Ann 1952 Rev § 9.1838), the testimony given presented a question of fact as to whether or not it would have been practicable to have sufficiently unloaded so as to have enabled him to move the truck completely off the highway onto the shoulder.

If defendant was negligent it was because he did not unload the truck or failed to put out the required flag or other warning which reasonable men might consider it his duty to do under the circumstances. But conceding that defendant was negligent, it is necessary that plaintiff show that such was the proximate cause of her injuries. See *Vaas* v. *Schrotenboer,* 329 Mich 642, 650.

Though the driver of the car is not a party herein and we therefore do not pass upon whether his actions amounted to culpable negligence, his conduct, as well as other circumstances, is relevant to the issue of proximate cause. The aluminum colored van type truck was 7-1/2 feet wide and its top was some 9 feet above the pavement. It loomed in front of the driver who became aware of its presence when it was some 800 to 1,200 feet away. The driver thereafter reacted in a manner consistent with the knowledge that a slow-moving or stationary vehicle was ahead. He slowed down, attempted to pass, but being unable to do so came back into line behind the truck. He testified that *he* knew the truck was not

moving when he started to pass it. The fact that plaintiff said that *she* did not realize the truck was stationary until they were 100 feet away does not seem to be relevant unless communicated to the driver in time to influence his conduct. Such was not the case here. It was the driver's perception and reactions that determined his course of action. The flag statute, CLS 1954, § 257.713 (Stat Ann 1952 Rev § 9.2413), provides:

"(c) Whenever any vehicle of a type referred to in this section is disabled upon the traveled portion of a highway or the shoulder thereof, outside of any municipality at any time when the display of fusees, flares, or electric lanterns is not required, the driver of such vehicle shall display 2 red flags upon the roadway in the lane of traffic occupied by the disabled vehicle, 1 at a distance of approximately 100 feet in advance of the vehicle, and 1 at a distance of approximately 100 feet to the rear of the vehicle. * * *

"(e) The flares, fusees, lanterns, and flags to be displayed as required in this section shall conform with the requirements of section 712 applicable thereto."

The section 712 referred to is CLS 1954, § 257.712 (Stat Ann 1952 Rev § 9.2412) which requires that such flags be "not less than 12 inches square." We have held that the absence of a light or flares may not be a proximate cause of an accident. See *Lindenfeld* v. *Michigan Interstate Truck Co.*, 274 Mich 681, 684; *Cothran* v. *Benjamin Cleenewerck & Son*, 235 Mich 351.

It is apparent that the driver possessed all of the knowledge that a flag not less than 12 inches square, required to be placed but 100 feet away from the truck, would have imparted to him. Under the circumstances it would not have added to the driver's notice and its absence cannot therefore be said to

have been a proximate cause of the accident. *Cf.*, *Engle* v. *Nelson*, 220 Iowa 771 (263 NW 505). Plaintiff argues that flags or warnings would have indicated that the truck was standing still, rather than moving, as the driver first thought it was. While this is not necessarily so, the circumstances indicate that the driver would not have reacted in a different manner or altered his conduct even if possessed of such knowledge.

The foregoing is equally true and applicable in regard to defendant's negligence, if any, of leaving the vehicle standing on the road without attempting to unload it. If the absence of flags is not a proximate cause then surely the mere presence of the truck about which the flags are to warn would not be the proximate cause. The sole proximate cause of the collision was the slippery condition of the highway and/or the driver's inattention to it.

Accordingly, the judgment should be reversed and a judgment, with costs, should be entered in defendant's favor.

BOYLES, J. The defendant left his truck standing on the traveled portion of the highway without displaying flags in the lane of traffic occupied by his vehicle. This was contrary to the express requirement of the cited statute. The facts as to how the accident occurred, when plaintiff's driver discovered he could not safely pass the truck, were fully disclosed to the jury, which found that the defendant truck driver was guilty of negligence which was a proximate cause of the accident. The court did not err in submitting that issue, as well as the question of contributory negligence of the plaintiff herself, to the jury as a question of fact.

If plaintiff's driver was also guilty of negligence which might also be a proximate cause, it cannot be imputed to her (*Bricker* v. *Green*, 313 Mich 218 [163

ALR 697]), nor would it excuse the truck driver from liability. There may be 2 proximate causes to an accident. *Sedorchuk* v. *Weeder,* 311 Mich 6; *Graham* v. *United Trucking Service, Inc.,* 327 Mich 694.

Affirmed.

CARR, C. J., and SHARPE, REID, DETHMERS, and KELLY, JJ., concurred with BOYLES, J.

SMITH, J., concurred in the result.