### DISMUKES *v.* MICHIGAN EXPRESS, INC.

1. APPEAL AND ERROR — JUDGMENT NON OBSTANTE VEREDICTO — RECORD.
    The Supreme Court examines the record in the light most favorable to the plaintiff on an appeal from the trial court's order granting defendant's motion for judgment *non obstante veredicto.*

2. NEGLIGENCE—PROXIMATE CAUSE—QUESTION OF FACT.
    Proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in consideration of the evidence in each particular case arising from the claimed negligence of the defendant.

3. AUTOMOBILES—ILLEGAL PARKING—PROXIMATE CAUSE—QUESTION FOR JURY—LIGHTS—NO PARKING ZONE.
    Evidence presented an issue of fact for consideration by jury

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 886.
[2] 38 Am Jur, Negligence § 351.
[3] 5A Am Jur, Automobiles and Highway Traffic § 403.
    Violation of parking laws as negligence.   17 ALR2d 585.
[4] 5A Am Jur, Automobiles and Highway Traffic §§ 290–292.

as to whether or not plaintiff's injuries were proximately caused by reason of the fact defendant's tractor and trailer were illegally parked at 8 p.m. in mid-November on street, where testimony shows the vehicles were parked facing south on east side of street on which any parking was barred and testimony was in dispute as to whether lights on the vehicles were lighted (CLS 1956, § 257.674).

4. SAME—STOPPING—ASSURED CLEAR DISTANCE—CONSTRUCTION OF STATUTES.
A reasonable construction must be placed upon the statute requiring that automobiles be so driven as to be able to stop within the assured clear distance ahead (CLS 1956, § 257.627).

5. SAME—LOSS OF MEMORY.
Plaintiff's claimed loss of memory as to what the situation was with respect to the last 80 feet his car traveled before colliding with defendant's illegally parked tractor and trailer combination on poorly lighted street must be accepted on appeal from judgment *non obstante veredicto*, where the record is viewed in the light most favorable to plaintiff (CLS 1956, §§ 257.627, 257.674).

6. SAME—NEGLIGENCE—CONTRIBUTORY NEGLIGENCE—QUESTIONS FOR JURY—EVIDENCE.
Evidence presented case for submission to, and supported verdict for plaintiff by, jury on issues of negligence of defendant, owner of southbound tractor and trailer combination parked on east side of street, and of contributory negligence of northbound plaintiff motorist whose car collided with front of defendant's vehicle at 8 p.m. in mid-November, in view of the peculiar nature of the street lighting, partial absence of curbing, descent of a hill, and uneven street surface (CLS 1956, §§ 257.627, 257.674).

Appeal from Berrien; Zick (Karl F.), J. Submitted October 2, 1962. (Docket No. 2, Calendar No. 49,068.) Decided December 3, 1962.

Case by William F. Dismukes, Sr., against Michigan Express, Inc., a Michigan corporation, for personal injuries sustained when his automobile struck defendant's illegally parked motor vehicle November 14, 1958. Verdict for plaintiff. Judgment for defendant *non obstante veredicto*. Plaintiff ap-

peals. Reversed and remanded for entry of judgment on jury's verdict.

*Butzbaugh, Page & Byrns,* for plaintiff.

*Paulson, Bennett & Palmer,* for defendant.

KELLY, J.   A jury in the Berrien county circuit court awarded plaintiff $15,000 damages for injuries sustained as the result of plaintiff's collision with defendant's parked tractor and trailer.

Defendant's motion for judgment *non obstante veredicto* was granted by the trial court on the ground that plaintiff was guilty of negligence as a matter of law and that plaintiff's negligence was a proximate cause of his injuries.

Plaintiff, on November 14, 1958, at about 8 p.m., was driving a 1954 Chevrolet north on North State street in the city of St. Joseph, Michigan. North State is a 2-lane, rough, uneven street, running north and south, and located in an industrial section of the city. Some 335 feet south of the point of the collision on State street, on the crest of a hill, are 2 sets of railroad tracks. Just north of the tracks, entering from the east, is Camber road, which is a 2-lane, hard-top road, serving the city's industries and their parking lots to the east. Some 300 feet north of the railroad tracks, and entering North State street from the east, is Graves street, which enters into the Whirlpool parking area and deadends at the east side of North State street. There was no fixed curbing on the east side of North State street north of the railroad tracks for some 210 feet.

North of the north side of Graves street is an open concrete surfaced area, used for unloading at a Whirlpool Corporation building and entered into from North State street.

Some time after 7 p.m., on November 14, 1958, 2 tractor-trailers owned by defendant came to North State street to unload their cargoes of steel at the Whirlpool dock. The truck driven by Arthur Fitch unloaded first, and then backed out of the unloading bay onto North State street so the second trailer could unload. Fitch, after backing out, then parked in a southerly direction directly facing oncoming traffic, approximately 1 to 2 feet from the east curb on North State street, just north of the Graves street intersection. Fitch then proceeded to assist the other driver unload, leaving his vehicle unattended. There was conflicting testimony as to whether or not the tractor-trailer had its parking lights on. Officer Hahn testified he observed no lights on the truck when he saw it a few minutes after the collision. No witnesses actually observed the accident. The testimony of defendant's witnesses was that the truck had its parking lights on at the time of collision (a clearance light at each side, 2 clearance lights on the top of the cab, and 2 clearance lights at the rear of the trailer). Defendant's witness, Arthur Ludwig, a guard at Whirlpool plant number 1, testified he was making the round of his stations shortly before the accident and that he observed the parked truck with amber lights illumined on both sides of the top of the truck.

On North State street, at the point of the accident, many signs were posted by the city of St. Joseph prohibiting parking on either side. Defendant admits violation of not only the parking ordinance of St. Joseph, but, also, of CLS 1956, § 257.674 (Stat Ann 1960 Rev § 9.2374), which makes parking unlawful where an official sign prohibits same.

Plaintiff, William F. Dismukes, testified that on the evening of November 14, 1958, at about 8 p.m., he was returning to his home after a business trip to Benton Harbor; that his brakes and lights were

operating properly, and that he had set his lights on "dims"; that he was driving 20 to 25 miles per hour and made observation as he approached the railroad tracks on North State street; that he did not see anything parked or located south of Graves street after passing over the tracks; that he had driven this route many times and as he crossed the tracks he made observation and could see outlines of the buildings on the north and south sides of Graves street; that he made observation at Camber road, the Whirlpool parking lot entrance, and Graves street, and did not observe anything that might have been a truck parked on the east curb just north of Graves street intersection. Plaintiff further testified that he did not see anything as he crossed Graves street on North State street and did not remember anything about the collision; that he was approaching the Graves street intersection and "the next thing I knew I was in the hospital."

On cross-examination plaintiff stated he had traveled this route many times during the past 3 years, both during the nighttime and the daytime. He indicated he would have been able to have stopped his car within a distance of 40 feet, traveling 25 miles per hour, but that he never saw defendant's truck ahead of him; that he was traveling close to an imaginary curb line.

On redirect examination plaintiff testified he had no memory of crossing Graves street on the night of the accident; that he had never seen a car or truck parked along the east side of North State street in any of the times he traveled it; and, on recross-examination, plaintiff stated he could see to the north line of Graves street, but nothing beyond that before the collision.

Later in the trial plaintiff was recalled to the stand and testified on redirect examination that his memory fails of the accident approximately 10 to 12 feet

south of the Graves street intersection. He testified he could see across the intersection, and possibly 8 or 10 feet beyond the intersection itself; that the intersection was 32 feet and that from this point where he lost his memory he could see a total of some 54 to 56 feet ahead of him, but did not see a truck parked on North State street.

Plaintiff's witness, Neil Berndt, city engineer, testified as follows: That there were posted "no parking" signs on both sides of North State street where the accident occurred; that there were 2 street lights from the railroad tracks to a point 400 feet north on North State street, but that there were no street lights on the east side of North State street.

Officer Hahn testified that it was not a direct, head-on collision; that the "center of the hood of the automobile probably fell right on the line of the right side of the semi-tractor and trailer"; that he did not notice any lighting on the tractor when he arrived at the scene, and no flares were placed around the vehicle; that it was somewhat foggy that evening and a slight mist; that the road was pretty bumpy; that the light on the Whirlpool building actually was intended to shine down on Graves street so that the plant guard could view all cars coming into Whirlpool on that street; that it illuminates very little of North State street at that point; that no skid marks were found; that earlier in the evening he saw a truck parked there without lights and had had difficulty seeing it; that in his experience of patrolling that area he had not observed trucks parked where this one was.

William Ehrenberg, the wrecker operator, testified that when he approached the railroad tracks on North State street he did not observe anything ahead; that the weather was foggy; that when he arrived at the scene of the accident the truck was 1 to 1-1/2 feet away from the curb; that the light on

the Whirlpool building at the Graves intersection lights the street very little, if any; that when he drove over the railroad tracks he could only see the police car flasher. He also testified the point of impact was the right front of each vehicle.

Additional testimony was introduced that the light on top of the Whirlpool building did not throw light on North State street where the accident occurred, but, rather threw a shadow in front of the building on North State street because the light hit the south side of the building, and plaintiff's testimony showed that the intersection of Graves and North State streets was dark.

We examine the record in the light most favorable to the plaintiff on an appeal from the trial court's order granting defendant's motion for judgment *non obstante veredicto*. See *Fitzpatrick* v. *Ritzenhein,* 367 Mich 326.

This Court in a recent decision, namely *Barnebee* v. *Spence Brothers,* 367 Mich 46, reiterated the well-established rule that proximate cause is ordinarily a question of fact for the jury, to be solved by the exercise of good common sense in consideration of the evidence in each particular case. See, also, Prosser on Torts (2d), "Functions of Court and Jury," § 50, p 281, and *Tracy* v. *Rublein,* 342 Mich 623.

There was sufficient evidence from which the jury could have found the defendant's negligence, by violating the "no parking" zone on North State street, contrary to CLS 1956, § 257.674 (Stat Ann 1960 Rev § 9.2374), on the night of the accident, was the proximate cause of plaintiff's injuries. *Berry* v. *Visser,* 354 Mich 38.

There remains the question whether plaintiff was guilty of contributory negligence as a matter of law, thereby precluding recovery from defendant. The trial court in its opinion determined plaintiff had a

duty to observe defendant's parked tractor-trailer and to stop within the assured clear distance ahead.

No objections as to the trial court's instructions are made by either plaintiff or defendant, and we may assume that the jury was properly instructed on all phases of the law applicable, including assured clear distance, and that the jury considered those instructions along with the evidence submitted.

This Court has repeatedly held that a reasonable construction must be placed upon the assured clear distance statute.* *Bard* v. *Baker,* 283 Mich 337; *Cookson* v. *Humphrey,* 355 Mich 296; and *Sun Oil Company* v. *Seamon,* 349 Mich 387, where we stated (pp 411, 412):

"The statute (assured clear distance) must be reasonably construed. A literal reading thereof would compel us to say that in every case of collision the statute has been violated by the mere fact of collision alone. The driver has either been going too fast, or, if driving at a reasonable speed, has permitted his attention to wander and thus has not perceived the obstruction in time to stop. Such literal interpretation would make the driver an insurer against any collision in which he might become involved. We cannot assume that the legislature intended such a result. The situations under which collisions occur are infinite in complexity and variety, and, to accomplish justice in particular cases, we have been forced to create a number of exceptions to the statutory edict."

No testimony was offered *in re* the last 80 feet that plaintiff's car traveled, due to plaintiff's claim of loss of memory caused by the accident. The question of loss of memory was not seriously challenged, and, under the favorable-view principle, must be accepted.

---

* CLS 1956, § 257.627 (Stat Ann 1955 Cum Supp § 9.2327).

In *Rytkonen* v. *City of Wakefield,* 364 Mich 86, we held that the defendant city was not entitled to a directed verdict on ground of contributory negligence as a matter of law on the part of plaintiff's decedent, a motorcyclist, whose vehicle collided with an unlighted street barricade on a stormy night, at 1:30 a.m., where there were no eyewitnesses to the accident, and we held such evidence presented a question of fact for jury as to contributory negligence of decedent.

The record presents a problem for decision that could cause a trial judge, or a member of this Court, to conclude that if he had been a member of the jury he would have determined that plaintiff's negligence precluded recovery. That, however, is not the privilege or prerogative of either the trial court or this Court.

The peculiar nature of the street lighting, the partial absence of curbing, the descent of a hill, the uneven street surface, and the improperly and illegally parking of the truck, presented testimony from which the jury could have found, under the circumstances of this case, plaintiff was not guilty of violating the assured clear distance statute and was entitled to recover for the damages he suffered.

This case warranted a submission to the jury of the question of proximate cause and contributory negligence, as reasonable men could differ on the findings.

The order of the lower court granting judgment *non obstante veredicto* is reversed, and the case remanded for entry of judgment in accordance with the jury's verdict. Plaintiff shall have costs.

CARR, C. J., and BLACK, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred with KELLY, J.

DETHMERS, J., concurred in result.